# EXHIBIT A

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (including all Schedules and Exhibits, the "Agreement") is made and entered into, as of September 23, 2024 (the "Execution Date"), by and between AMDEL Holdings, LLC, a Delaware limited liability company ("Buyer"), and Jeoffrey L. Burtch ("Burtch"), as Chapter 7 Trustee for Arnold Transportation Services, Inc., a Pennsylvania corporation ("Seller"). Buyer and Seller are each a "Party" and are together the "Parties".

## RECITALS

A. On April 30, 2024 (the "Petition Date"), Arnold Transportation Services, Inc. ("Arnold" or the "Debtor"), filed with the Bankruptcy Court for the District of Delaware a voluntary petition under Chapter 7 of the Bankruptcy Code, which case is designated as Case No. 24-10928-CTG (the "Bankruptcy Case").

B. Burtch is the duly appointed and acting trustee for Arnold.

C. Pursuant to Section 363(f) of the Bankruptcy Code and subject to Bankruptcy Court approval, Seller desires to sell or otherwise transfer, and Buyer desires to purchase or otherwise acquire, certain assets of the Chapter 7 estate free and clear of all liens, claims and encumbrances as set forth in this Agreement and the documents executed in connection herewith (collectively, the "Contemplated Transactions"). The Parties desire to reduce their agreement to writing and make certain other agreements as set forth herein.

D. In the course of its business, the Debtor generated or acquired certain hazardous materials consisting of approximately 10 tires, 10 drums of antifreeze, 20 drums of used oil and trap waste, 23 empty oil drums/totes, 5 tanks with refrigerants and aerosols, 4 tanks with absorbent materials, and 2 pallets of paint (the "Hazardous Materials") that the Buyer and Seller have identified. The Seller desires to properly dispose of the Hazardous Materials.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual terms, covenants, and agreements contained herein, the Parties agree as follows:

## ARTICLE I
## SALE AND TRANSFER OF ASSETS

Section 1.1  Assets to be Sold. At the Closing (as defined in Section 2.1), but effective as of the Effective Time (as defined in Section 2.1), Seller shall sell, convey, assign, transfer, and deliver to Buyer, and Buyer shall purchase or otherwise acquire from Seller, all of Seller's right, title, and interest in and to the assets set forth on Schedule 1.1 (collectively, the "Purchased Assets"). The Purchased Assets shall be sold and conveyed free and clear of all mortgages, claims

leases, options, hypothecations or similar restrictions, liens, pledges, security interests, and charging orders and any other encumbrance, right or interest of any kind or character, whether vested or contingent, that evidences or secures a debt or payment obligation or adverse ownership interest in the Purchased Asset in question, whether imposed by agreement, understanding, law, equity or otherwise, whether voluntary or involuntary and whether arising by law, contract, or otherwise, and shall include impairments of title of any kind or nature whatsoever and shall include "liens" as such term is defined in Section 101(37) of the Bankruptcy Code (collectively, "Liens") and upon Closing, all right, title, and interest held by Seller in the Purchased Assets shall transfer to and vest with Buyer.

Section 1.2     Consideration.  The consideration for the Purchased Assets shall be One Hundred Five Thousand and 00/100 Dollars ($105,000.00) (the "Cash Purchase Price").  As additional consideration, Buyer agrees to fund the Seller's proper disposal of the Hazardous Materials through a licensed third party contractor mutually acceptable to Buyer and Seller.  At the Closing, Buyer shall pay Seller an amount equal to the Cash Purchase Price in immediately available funds, shall fund the Seller's disposition of the Hazardous Materials with a licensed third party contractor, and shall oversee such third party contractor's disposition of the Hazardous Materials.

## ARTICLE II
## CLOSING AND TRANSITION

Section 2.1     Closing.  Subject to and upon the terms and conditions of this Agreement, the closing of the Contemplated Transactions (the "Closing") will take place in person, electronically, by email, or by facsimile on the first business day after the Sale Order becomes a final order  (the "Closing Date").  The effective time of the Closing (the "Effective Time") shall be at 12:01 a.m. Central Daylight Time on the Closing Date.

Section 2.2     Closing Obligations.  In addition to all other actions required to be taken and all other documents, certificates, writings, or instruments required to be delivered pursuant to this Agreement (such documents collectively, and together with those documents set forth in this Section 2.2, the "Ancillary Documents"), at the Closing:

(a)     Seller shall deliver to Buyer instruments of assignment and conveyance in form and substance reasonably satisfactory to Purchaser, transferring to Purchaser all right, title and interest in and to the Assets, including without limitation:

(i)     a bill of sale for all Assets in a form reasonably acceptable to Purchaser, duly executed by Seller (the "Bill of Sale");

(ii)     an assignment and assumption agreement in a form reasonably acceptable to Purchaser, which shall include an assignment of any

> > beneficial interest in the MX Action, as hereafter defined, duly executed by Seller (the "Assignment Agreement");
>
> > (iii) titles for all titled personal property included in the Assets in forms reasonably acceptable to Purchaser, duly executed by Seller; and
>
> > (iv) all such other certificates, instruments, writings, or agreements as are reasonably requested by Purchaser, including, without limitation, as may be necessary to vest in Purchaser good and marketable title to the Assets free and clear of all Encumbrances, except for the Permitted Encumbrances.
>
> (b) Buyer shall deliver to Seller:
>
> > (i) the payment of the Purchase Price; and
>
> > (ii) such documents and instruments as Seller shall reasonably request to further effect or evidence the transactions contemplated by this Agreement the Contribution Agreement.

Section 2.3    Risk of Loss.  Seller shall bear the risk of loss to the Purchased Assets prior to the Effective Time.  Buyer shall bear the risk of loss to the Purchased Assets from and after the Effective Time.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer as follows:

Section 3.1    Enforceability and Authority.  This Agreement and the Ancillary Documents constitute the legal, valid, and binding obligations of Seller, enforceable against each of them in accordance with their terms, subject only to obtaining Bankruptcy Court approval of this Agreement.  Subject to such Court approval, Seller has the absolute and unrestricted right, power, and authority to execute and deliver this Agreement and the other Ancillary Documents to which Seller is a party and perform Seller's obligations hereunder and thereunder.

Section 3.2    Motion to Approve Agreement.  Within five days of the Execution Date, Seller shall file a Motion to Approve Sale of Assets Free and Clear of Liens and Encumbrances in substantially the form set forth as Exhibit A hereto and shall seek to require any party claiming any ownership interest in the Purchased Assets to assert such ownership claim in advance of the hearing on the Sale Motion. Seller shall diligently thereafter seek Court approval of such Motion and the entry of an order in substantially the form attached as Exhibit B hereto (the "Sale Order").  The Sale Order shall, *inter alia*, provide for the lifting of the automatic stay with respect to the action styled *MX Solutions, LLC v. Arnold Transportation, Inc.*, No. 22CV33460 (Cir. Ct. Multnomah Cnty., Or. 2022) (the "MX Action") and shall provide that the Debtor shall continue to pursue the MX Action for the sole benefit of and at the sole cost of Buyer, with the Buyer having an irrevocable power of attorney to prosecute and settle the MX Action.

Section 3.3.    Title.  Upon the Closing, Buyer will acquire lawful and valid title to the Purchased Assets free and clear of all Liens. **NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY THE PURCHASED ASSETS ARE BEING SOLD ON AN "AS IS WHERE IS" BASIS WITH ALL FAULTS AND WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE BY THE SELLER.**  TO BE CLEAR, THE SELLER MAKES NO REPRESENTATION THAT ANY OF THE PURCHASED ASSETS ARE OWNED BY THE DEBTOR OR AVAILABLE FOR SALE, BUT SHALL, AS SET FORTH IN SECTION 3.2 ABOVE, REQUEST IN THE SALE MOTION THAT ANY PARTY ASSERTING ANY OWNERSHIP INTEREST MUST FILE A CLAIM TO OWNERSHIP PRIOR TO THE ENTRY OF THE SALE ORDER OR BE FOREVER BARRED FROM ASSERTING SUCH ADVERSE TITLE.  INCLUDE IN THE .  THE BUYER ACKNOWLEDGES THAT IT HAS HAD THE OPPORTUNITY TO INSPECT THE PURCHASED ASSETS AND INDEED CREATED THE LIST OF PURCHASED ASSETS.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller as follows:

Section 4.1    Enforceability and Authority.  This Agreement and the Ancillary Documents will, upon Bankruptcy Court approval, constitute the legal, valid, and binding obligation of Buyer, enforceable against Buyer in accordance with their terms. Buyer has the absolute and unrestricted right, power, and authority to execute and deliver this Agreement and the other Ancillary Documents to which it is a party and to perform its obligations hereunder and thereunder, and such action has been duly authorized by all necessary action by Buyer's members and managers.

## ARTICLE V
## CONDITIONS PRECEDENT

Section 5.1    Conditions to the Obligations of the Buyer.  The obligations of the Buyer to effect the Transaction are subject to the satisfaction at or prior to the Closing of the following conditions, unless waived in writing by the Buyer:

(a) the Seller shall have performed in all material respects all obligations required to be performed by it under this Agreement at or prior to the Closing;

(b) the Seller shall have executed, as applicable, and delivered to the Buyer all of the documents and other items required to be delivered by the Seller at the Closing;

(c) no Action shall be pending or threatened before any Government Entity that seeks to or does, and no Law shall be in effect that will, prevent consummation of the Agreement;

(d) the Sale Order shall have been obtained and be in full force and effect and shall have become a Final Order.

Section 5.2 <u>Conditions to the Obligations of the Seller</u>. The obligations of the Seller to effect the Transaction are subject to the satisfaction at or prior to the Closing of the following conditions, unless waived in writing by the Seller:

(a) the Buyer shall have performed in all material respects all obligations required to be performed by it under this Agreement at or prior to the Closing;

(b) the Buyer shall have executed, as applicable, and delivered to the Seller all of the documents and other items required to be delivered by the Buyer at the Closing;

(c) no Action shall be pending or threatened before any Government Entity that seeks to or does, and no Law shall be in effect that will, prevent consummation of the Transaction; and

(d) the Sale Order shall have been obtained and be in full force and effect and shall have become a Final Order.

## ARTICLE VI
## GENERAL PROVISIONS

Section 6.1 <u>Waiver of Seller's Rights to Proceeds of MX Action</u>. Seller hereby expressly acknowledges and agrees that, upon the transfer of the Purchased Assets to Buyer, Seller shall not have any beneficial right, title, or interest in or to any proceeds, recoveries, settlements, judgments, or any other form of financial benefit derived from the MX Action. Any and all such proceeds shall be and remain the sole and exclusive property of the Buyer. Buyer shall be responsible for any charging lien with respect to the MX Action. Buyer shall have full and complete authority to prosecute (in its name or the name of the Debtor) and to settle the MX Action.

Section 6.2 <u>Expenses</u>. Except as otherwise herein expressly provided, each Party shall bear its own expenses (including, without limitation, fees of their respective attorneys and consultants and experts) incurred by such Party in connection with this Agreement or the consummation of the Contemplated Transactions. Seller shall bear all sales and use, transfer, stamp, value added, and similar taxes that may be imposed as a result of the Contemplated Transactions.

Section 6.3 Notices. All notices, requests, demands, and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally or by recognized overnight courier service on the Party to whom notice is to be given, on receipt of confirmation of good transmission by facsimile, or on the fourth day after mailing if mailed to the Party to whom notice is to be given by first class mail, registered or certified, return receipt requested, postage prepaid, and properly addressed as follows:

To Seller:

Jeoffrey L. Burtch, as Chapter 7 Trustee for Arnold Transportation Services, Inc.
919 Market Street, Ste. 460
Wilmington, Delaware 19801

With a copy to:

Cozen O'Connor
Attn: Mark E. Felger, Esquire
1201 North Market Street, Suite 1001
Wilmington, Delaware 19801

To Buyer:

AMDEL Holdings, LLC
5029 Shore Side Drive
Lakeland, FL 33812
Attention: Michael DelBovo

With a Copy to:

Holden, Kidwell, Hahn & Crapo, P.L.L.C.
Attn: Dean J. Parker
1000 Riverwalk Drive, Ste. 200
Idaho Falls, Idaho 83402

With a Copy to:

Stichter, Riedel, Blain & Postler, P.A.
Attn: Harley E. Riedel
110 E. Madison Street, Suite 200
Tampa, Florida 33602

Section 6.4 Governing Law; Forum. This Agreement shall be construed and enforced in accordance with the laws of the State of Delaware without regard to conflicts-of-laws principles that would require the application of any other law. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may only be brought against

any of the Parties in the state or federal courts sitting in the State of Delaware, and each of the Parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objections to venue laid therein.  Process in any action or proceeding referred to in the preceding sentence may be served on any Party anywhere in the world.

Section 6.5    Entire Agreement.  This Agreement, the Ancillary Documents, and the Closing deliveries identified herein contain the entire agreement among the Parties hereto and supersedes all prior agreements among the Parties hereto with respect to the Contemplated Transactions.  All Schedules referred to herein are intended to be, and hereby are, specifically made a part of this Agreement.

Section 6.6    Assignment.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, legal representatives, and permitted assigns.  This Agreement may not be assigned by any Party without the prior written consent of the other Parties; provided, Buyer may assign this Agreement to an affiliated or related entity or party so long as Buyer remains liable for performance of any of its duties contained herein.

Section 6.7    Severability.  If any provision of this Agreement is held to be illegal, invalid, or unenforceable, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance therefrom.  Furthermore, in lieu of such illegal, invalid, or unenforceable provision there shall be automatically added as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and still be legal, valid, and enforceable.

Section 6.8    Amendments.  This Agreement shall not be changed or terminated orally and no waiver of compliance with any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by a written instrument duly executed by the Party to be charged therewith.

Section 6.9    Attorneys' Fees.  In any dispute regarding the enforcement and/or breach of this Agreement, the prevailing Party shall be entitled to recover all costs and fees, including attorneys' fees, incurred by such prevailing Party in enforcing, and/or recovering damages for the breach of, the terms of this Agreement.

Section 6.10   Headings.  Paragraph headings herein are for convenience only and shall not affect the interpretation of any provision.

Section 6.11   Counterparts; Electronic Delivery.  This Agreement may be executed in one or more counterparts, all of which, when taken together, shall constitute one and the same instrument.  Delivery of an executed copy of this Agreement by telecopy or other means of electronic communication producing a printed copy will be deemed to be an execution and delivery of this Agreement on the date of such communication by the Parties so delivering such a copy.

Any Party so delivering such a copy via electronic communication shall deliver an executed original of this Agreement to the other Parties upon request.

Section 6.12    Further Assurances.  The Parties shall cooperate reasonably with each other and with their respective representatives in connection with any steps required to be taken as part of their respective obligations under this Agreement, and shall (a) furnish upon request to each other such further information; (b) execute and deliver to each other such other documents; and (c) do such other acts and things, all as the other Party may reasonably request for the purpose of carrying out the intent of this Agreement and the Contemplated Transactions, including, without limitation, assisting Buer in obtaining the necessary consents and/or court orders to lift the stay in the Pride Action.  Any further assurances requested by Buyer must be at Buyer's sole cost.

Section 6.13    Representation; Separate Counsel.  It is understood and agreed that Holden, Kidwell, Hahn & Crapo, P.L.L.C. ("HKHC") represents Buyer in connection with this Agreement and does not represent Seller even though HKHC may now or previously has provided legal representation to Seller on other matters.  Seller specifically agrees to waive any and all conflicts arising out of HKHC's representation of Seller on other matters and specifically agrees that HKHC may represent Buyer in connection with this Agreement and shall not be representing Seller in connection with this Agreement.  Seller expressly acknowledges that Seller has been advised (i) that Seller has not been represented by HKHC with respect to this Agreement and the transactions contemplated herein and (ii) to seek separate counsel of Seller's own with respect to the same.

Section 6.14    No Assumption of Liabilities by Buyer.  Except with respect to the limited obligation to fund a third party contractor's disposition of the Hazardous Materials, the Buyer assumes no obligations or liabilities of Seller or Arnold, shall not be responsible for any such liability, and, as further described above, acquires the Purchased Assets free and clear of any such obligations, liabilities and claims.

[Signature Page Follows]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**BUYER:**

AMDEL Holdings, LLC

By: _____
Michael DelBovo, Manager

**SELLER:**

_____/s/ Jeoffrey L. Burtch, Trustee_____
Jeoffrey L. Burtch, as Chapter 7 Trustee for Arnold Transportation Services, Inc.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**BUYER:**

AMDEL Holdings, LLC

By: *[signature: Michael DelBovo]*

Michael DelBovo, Manager

**SELLER:**

_____
Jeoffrey L. Burtch, as Chapter 7 Trustee for Arnold Transportation Services, Inc.

# SCHEDULE 1.1

## Purchased Assets

1. The inventory, office furniture and equipment, and other assets listed in the attached Addendum 1.

2. The rolling stock and other heavy equipment listed in the attached Addendum 2.

3. All rights, claims, and interests of the Seller, if any, in that certain action styled *MX Solutions, LLC v. Arnold Transportation, Inc.*, No. 22CV33460 (Cir. Ct. Multnomah Cnty., Or. 2022) (the "MX Action).

# ADDENDUM 1

# Purchased Assets
# (inventory, office furniture and equipment, and other assets)

| | |
|---|---:|
| **Appliance** | **30** |
|    AC Portable | 9 |
|    Coffee Maker | 3 |
|    Dishwasher | 1 |
|    Fridge | 3 |
|    Icemaker | 1 |
|    Microwave | 10 |
|    Mini Fridge | 3 |
| **Chairs** | **275** |
|    Breakroom | 89 |
|    Conference | 22 |
|    High Top | 2 |
|    Office | 117 |
|    Theater | 9 |
|    Waiting | 36 |
| **Deco** | **88** |
|    Clock | 6 |
|    Holiday | 42 |
|    Maps | 2 |
|    Photo Graphs | 24 |
|    Pictures | 6 |
|    White Board | 8 |
| **Electronics** | **231** |
|    3 hole punch | 2 |
|    Banker Calculators | 4 |
|    Busy Lights | 20 |
|    Cell Phone | 2 |
|    Check Scanner | 2 |
|    Laminator | 1 |
|    Paper Shreader | 3 |
|    PeopleNet | 161 |
|    Phone | 3 |
|    Projector | 1 |
|    Router | 1 |
|    Scanner | 3 |
|    Space Heater | 4 |
|    Speaker/Mic | 7 |
|    Switch | 6 |

| | |
|---|---:|
| Tablet | 4 |
| UPS System | 1 |
| Video Camera | 5 |
| Video Equipment | 1 |
| **Furniture** | **216** |
| Cabinet | 24 |
| Computer Lab Desk | 1 |
| Corner Desk | 1 |
| Cubical | 86 |
| Cubical w/ door | 1 |
| Desk | 5 |
| Desk Gaming | 4 |
| File Cabinet Drawers | 42 |
| Folding Table | 1 |
| L Desk | 3 |
| Laminent Shelf | 1 |
| PC Cabinet | 1 |
| Shelves | 29 |
| Side Table | 1 |
| Single File Cabinet | 12 |
| TV Stand | 1 |
| U Desk | 2 |
| U Desk w/ credenza | 1 |
| **Monitor** | **177** |
| 20in | 1 |
| 21in | 7 |
| 22in | 149 |
| 22in Broken | 8 |
| 22in w/ dock | 12 |
| **Other** | **11** |
| Basket Ball hoop | 1 |
| Coolers | 3 |
| Party Tent | 1 |
| Trash Recept | 6 |
| **Parts** | **1108** |
| Inverters | 100 |
| Nuts, Fittings | 1000 |
| Side Mirrors | 6 |
| Obsolete | 1 |
| Scrap Metal | 1 |
| **PC** | **96** |
| Laptop | 33 |

| | |
|---|---|
| Laptop Broken | 7 |
| Mini Computer | 3 |
| Stack | 46 |
| Stack Broken | 7 |
| **PC Access** | **110** |
| Computer Bags | 11 |
| Dock Setin | 22 |
| Dock USBC | 9 |
| Headsets | 14 |
| Keyboard/Mouse | 54 |
| **Printer** | **12** |
| Badge Printer | 1 |
| Desktop | 5 |
| Label Printer | 6 |
| **Supplies** | **734** |
| Air Filters | 10 |
| Breakroom | 47 |
| Cart | 4 |
| Cleaning | 34 |
| Fan | 1 |
| Ladders | 7 |
| Lightbulbs | 15 |
| Misc Office | 498 |
| Paper Cutter | 1 |
| Rolling Cart | 1 |
| Shop | 112 |
| Step Ladder | 1 |
| Toolbox | 2 |
| White Board | 1 |
| **Table** | **43** |
| Breakroom | 21 |
| Conference | 6 |
| End Table | 1 |
| Folding Table | 8 |
| Picknick | 5 |
| Side | 2 |
| **TV** | **17** |
| 40in | 2 |
| 45in | 4 |
| 46in | 3 |
| 48in | 1 |
| 55in | 3 |
| 70in | 3 |

| | |
|---|---|
| 75in | 1 |
| **Software** | **1** |
| Truckmate | 1 |

# ADDENDUM 2

## Purchased Assets
### (rolling stock and other heavy equipment)

## **TRUCKS**

|  |  | VIN |  |  |  | Location |
|---|---|---|---|---|---|---|
| 69065 | Daycab | 3AKJGEDV8GDFZ4014 | FRTLNR | Cascadia | 2016 | GP Yard |
| 69068 | Daycab | 3AKJGEDV3GDFZ4017 | FRTLNR | Cascadia | 2016 | GP Yard |
| 69070 | Daycab | 3AKJGED67GDGZ1018 | FRTLNR | Cascadia | 2016 | GP Yard |
| 69022 | Daycab | 3AKJGLD55GSGN4167 | FRTLNR | Cascadia | 2016 | GP Yard |
| L686 | Black | 3AKJGLD57GSGN4171 | FRTLNR | Cascadia | 2016 | GP Yard |
| L688 | Black | 3AKJGLD54GSGN4130 | FRTLNR | Cascadia | 2016 | GP Yard |
| L689 | Black | 3AKJGLD52GSGN4174 | FRTLNR | Cascadia | 2016 | GP Yard |

## **TRAILERS**
### **NEED TO APPLY FOR TITLES**

| | | |
|---|---|---|
| 312018 | 1DW1A5326CS341417 | GP |
| 535058 | 1UYVS2539FP251809 | GP |
| 857829 |  | GP |
| 55361 |  | GP |
| 55252 | 1JJV532W95L921821 | GP |
| 703826 | 1JJV532W87L094624 | GP |
| 702166 | 1JJV532W87L056861 | GP |
| 533875 | 5V8VC5322EM404373 | GP |
| 537614 |  | GP |
| 702340 |  | LBJ |
| 533501 | 5V8VC5323EM400140 | Tulsa |
| 753080 | 3H3V532C7HT585080 | FTW |
| 601117 | 1JJV532W26L993171 | NY |

## **OTHER**

| | | | |
|---|---|---|---|
| Ford | Taurus | 1FAHP2EW5BG125826 | GP |
| Ford | Bus | I"FDEE3FS3DDA89106 | GP |
| 28' CONTAINERS | | 4 Misc on ground | GP |