## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| PARKER GLOBAL ENTERPRISES, INC., *et al.*,[1] | ) Case No. 24-10929 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Related to Docket Nos. 86 and 97** |

## MOTION OF MX SOLUTIONS LLC FOR RECONSIDERATION
## OF THE SALE ORDER AND FOR ADDITIONAL RELIEF

MX Solutions LLC ("<u>MX</u>") by and through its undersigned counsel, submits this motion (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "<u>Proposed Order</u>"), seeking reconsideration of the October 21, 2024 *Amended Order (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C.§ 363(b) and (f); and (B) Granting Related Relief* [Docket No. 97] (the "<u>Sale Order</u>") and in support hereof[2], states as follows:

### Preliminary Statement

1.      MX and Debtor Arnold Transportation Services, Inc. ("<u>Arnold</u>") were, and continue to be, parties to pending litigation in the Circuit Court of Multnomah County, Oregon in a case captioned as *MX Solutions, LLC v. Arnold Transportation Services, Inc.,* No. 22CV33460 (Cir. Ct. Multnomah Cnty., Or. 2022) (the "<u>Oregon Litigation</u>").  Consequently, MX is a creditor and party-in-interest in these cases.  MX holds a claim against Arnold. Additionally, MX was a known interested party with respect to the assets of Arnold prior to the Petition Date.

---

[1]     The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Arnold Transportation Services, Inc. (24-10928-CTG), Parker Global Enterprises, Inc. (24-10929-CTG); Parker Transport Co. (24-10930-CTG); and DVP Holdings Corp. (24-10931-CTG).

[2]      Contemporaneously herewith, MX has filed the *Declaration of  Peter Stott in Support of the Motion of MX Solutions LLC for Reconsideration of the Sale Order and for Additional Relief* and the *Declaration of Steven M. Wilker in Support of the Motion of MX Solutions LLC for Reconsideration of the Sale Order and for Additional Relief* each of which are incorporated by reference herein and are further support for the Motion.

2.      In the Oregon Litigation, MX has asserted a claim for declaratory relief and for attorney fees against Arnold, and Arnold has asserted counterclaims against MX.  Arnold is seeking nearly $5.6 million, along with prejudgment interest at Oregon's statutory rate of 9% per annum, and attorney fees.

3.      The Oregon Litigation arises from an earn-out dispute associated with an Assets Purchase Agreement between Arnold and MX entered into in 2021, pursuant to which MX purchased certain assets from Arnold.  In the spring of 2022, the parties had a dispute concerning the calculation of the earn-out based on the 2021 results of the purchased assets.  The parties submitted the dispute to an independent accountant pursuant to the Assets Purchase Agreement, who issued his decision in September 2022.

4.      Believing that the independent accountant had exceeded his authority, MX filed suit for declaratory relief and asserted a claim under Oregon Rule of Civil Procedure 68 for its attorney fees.  After Arnold sought and failed to have the independent accountant's determination confirmed as an arbitration award, the parties proceeded through document discovery and depositions.  With trial scheduled to begin May 13, 2024, Arnold filed a motion for summary judgment on March 1, 2024.  That motion was denied on the record by the judge on April 25, 2024.  No order was entered formalizing that order because Arnold filed for bankruptcy on April 30, 2024.

5.      During settlement negotiations in April 2024, Arnold, through the principal of the former owner of one of the Debtors and the acting president of the Arnold, Michael DelBovo ("DelBovo"), rejected offers by MX that were significantly higher than the cash consideration accepted by the bankruptcy Trustee.  Arnold's last demand was $4.5 million.  MX rejected that demand.  After Arnold's motion for summary judgment was denied, MX was prepared to proceed

1

to trial until the case was stayed as a result of the Arnold bankruptcy filing. In light of the denial of Arnold's motion for summary judgment, MX was not willing to pay the amounts it had previously offered, but it would have paid and is prepared to pay more than the $105,000 accepted by the Trustee and the disposal costs for the hazardous materials. As a result, the assertion in the *Chapter 7 Trustee's Motion for Entry of An Order: (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C.§ 363(b) and (f) and (B) Granting Related Relief* [Docket No. 86] (the "<u>Sale Motion</u>") that the offer it has received "appears superior to any other offer that the Trustee might reasonably expect, if any other offer were even to be made" (*id.* ¶ 16) is not well founded.

6.     MX is requesting that the Court reconsider and set aside the Sale Order in its entirety -- including the good faith findings made therein under section 363(m) of the Bankruptcy Code -- and require the refiling of the Sale Motion to be properly noticed and to afford interested parties with an opportunity to participate in a public auction for the Purchased Assets (defined below). Should the Court deny the relief requested in this Motion, it would undermine the bankruptcy process by allowing a sale without disclosure of all facts and circumstances surrounding the purchaser thereunder, without attested or affirmed facts or evidence to support the findings made in the Sale Order, and without notice to affected parties.

<u>**Jurisdiction and Venue**</u>

7.     The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. MX confirms its consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief requested herein are sections 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 59 of the Federal Rules of Civil Procedure (the "Federal Rules") made applicable in bankruptcy cases by rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and alternatively under Federal Rule 60 made applicable in bankruptcy cases by Bankruptcy Rule 9024, and Local Rules 2002-1 and 9013-1.

## Background

10. On April 30, 2024 (the "Petition Date"), Arnold Transportation Services, Inc., Parker Global Enterprises, Inc., Parker Transport Co., and DVP Holdings Corp. (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

11. On May 1, 2024 the Debtors each filed their *Schedules of Assets and Liabilities* in each of the Debtors' cases (collectively, the "Schedules"). Despite the pending Oregon Litigation, which was clearly known to the Debtors, MX and the Oregon Litigation were not listed on any of the Schedules of Arnold, but rather listed solely on the Schedules of Debtors DVP Holdings Corp. with a value of zero dollars.

12. On May 1, 2024 each of the Debtors filed their respective *Statement of Financial Affairs* in each of the Debtors' cases (collectively, the "SOFAS"). Despite the pending Oregon Litigation that was clearly known to the Debtors, MX and the Oregon Litigation were not listed on any of the SOFAS.

13.     On May 1, 2024 the Debtors filed their *List of Creditors* in each of the Debtors' cases (collectively, the "Creditors' List"). Despite the pending Oregon Litigation that was clearly known to the Debtors, MX was not listed on any of the Creditors' Lists.

14.     On May 2, 2024 Jeoffrey L. Burtch (the "Trustee") was appointed interim Chapter 7 trustee for each of the Debtors' estates.

15.     On May 2, 2024 a *Notice of Chapter 7 Bankruptcy Cases* [Docket No. 8] (the "Notice of Commencement") was filed in each of the Debtors' cases which scheduled the meeting of creditors under section 341 of the Bankruptcy Code. As evidenced by the *Notice Recipients* [Docket No. 8-1] filed with each Notice of Chapter 7 Bankruptcy Cases, MX was not served with the Notice of Commencement. The filed Schedule of Assets and Liabilities showed no assets in certain of the Debtors' cases and no liabilities in certain of the Debtors' cases, suggesting that these were no asset cases.  The Notice of Commencement in each of the Debtors' cases also did not assert a deadline for filing claims for the same reason.

16.     On May 30, 2024, the Court entered the Order Granting Motion for Joint Administration [Docket No. 22].

17.     On May 30, 2024, the Trustee held the first meeting of creditors pursuant to section 341 of the Bankruptcy Code in each of the Debtors' cases (the "341 Meeting").

18.     On May 31, 2024 the Trustee filed the *Notice of Assets* in each of the Debtors' cases (*see e.g.* Docket No. 26 in Case No.24-10928 (CTG)) presumably because the Trustee subsequently learned at the 341 Meeting of potential assets to liquidate and monetize. As evidenced by the *Notice Recipients* (*see e.g.* Docket No. 26-1 in Case No.24-10928 (CTG)) filed with the Notice of Assets in each of the Debtors' cases, MX was not served with the Notice of Assets.

19.     On June 24, 2024, the Trustee filed the *Application of Jeoffrey L. Burtch, Chapter 7 Trustee to Retain and Compensate Consultants* [Docket No. 57] (the "Consultant Application") which sought to permit the Trustee to retain several former officers and employees of the Debtors, including DelBovo, to assist the Trustee "in the identification, pursuit and recovery of Debtors' accounts receivable; and to support other administrative and ministerial services that the Trustee may require in winding up the Estates."   *See* Consultant Application at ¶10. Consequently, DelBovo was tasked with helping the Trustee maximize the value of the Debtors' assets for all constituents.

20.     On September 27, 2024, the Trustee filed the Sale Motion. The Sale Motion was not supported by attested or verified facts or any supporting declarations or affidavits. Further, as evidenced by the Certification of Service [Docket No. 86-4] filed with the Sale Motion, MX was not served with the Sale Motion, despite the fact that the Trustee was aware of and investigated the Oregon Litigation, as recited in the Sale Motion, and that the Oregon Litigation was part of the Purchase Assets under the APA.  (*See* ¶ 21-22 below).

21.     The Sale Motion recites that the purchaser is AMDEL Holdings, LLC ("Purchaser"), an entity controlled by DelBovo, and that DelBovo is the principal of the former owner of one of the Debtors and the acting president of the Debtors. *See* Sale Motion at ¶ 7-9.

22.     The Sale Motion attached as Exhibit A the Asset Purchase Agreement (the "APA"), which defines the assets to be purchased thereunder as those set forth on Schedule 1.1 (the "Purchased Assets"), which includes the Oregon Litigation.  *See* Sale Motion, Exhibit A.

23.     The Sale Motion also recites that the Trustee needed to review the Oregon Action to understand what rights, if any, the Debtors' estate had in that litigation and was amenable to

receiving an offer from DelBovo for the Oregon Litigation and other assets of the Debtors. *See* Sale Motion at ¶ 8.

24. The Sale Motion set an objection deadline of October 16, 2024 and was scheduled for a hearing on October 23, 2024. On October 17, 2024, however, the Trustee filed a *Certificate of No Objection Regarding Chapter 7 Trustee's Motion for Entry of An Order: (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C.§ 363(b) and (f) and (B) Granting Related Relief* [Docket No. 95].

25. On October 18, 2024, the Court entered the *Order (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C.§ 363(b) and (f); and (B) Granting Related Relief* [Docket No. 96] that was amended by the *Amended Order (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C.§ 363(b) and (f); and (B) Granting Related Relief* [Docket No. 97] (the "<u>Sale Order</u>") entered by the Court on October 21, 2024 and which is the subject of this Motion.

26. Despite the fact that the Trustee was aware of and presumably investigated the Oregon Litigation as recited in the Sale Motion, and that the Oregon Litigation was part of the Purchased Assets under the APA (*see* ¶ 21-22 above), the Sale Motion was not served on MX, the Sale Order was not served on any parties, and MX first learned of the sale of the Purchased Assets (and that there had been a motion to approve the sale) when opposing counsel in the Oregon Litigation sent a copy of the Sale Order to MX's counsel in the Oregon Litigation.

<b><u>Basis for Relief</u></b>

**A.     Reconsideration is Necessary to Consider Previously Undisclosed Material Information.**

27. Federal Rule 59(e), made applicable to these bankruptcy proceedings by Bankruptcy Rule 9023, permits a motion for reconsideration. *-In re Mason*, 527 F. App'x 118, 120 (3d Cir. 2013) ("Rule 59(e) of the Federal Rule of Civil Procedures applies to motions for

6

reconsideration in bankruptcy proceedings.") (citing Fed. R. Bankr. P. 9023); *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006).  Federal Rule 59(e) provides the Court with the power to alter and/or amend its Sale Order.  The Third Circuit has recognized that a Federal Rule 59(e) motion may be granted based on any one of three grounds:  "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (citations omitted); *see Pacific Insurance Co. v. American National Fire Insurance Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997)).

28.     Motions for reconsideration under Federal Rule 60(b) of the Rules of Civil Procedure "must show one or more of the six enumerated grounds for reconsideration" available under the rule.[3]  *In re Grigg*, No. 11-71206-JAD, 2013 WL 5310207, at *1 (Bankr. W.D. Pa. Sept. 20, 2013).  Rule 60(b)(1) of the Rules of Civil Procedure, made applicable to chapter 11 cases by Bankruptcy Rule 9024, provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . (1) mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b); *see also Claybrook v. AutoZone Tex., L.P. (In re Am. Remanufacturers, Inc.)*, 439 B.R. 633, 636 (Bankr. D. Del. 2010) ("Rule 60 allows courts to grant relief from a final order for, among other reasons, 'mistake, inadvertence, surprise, or excusable neglect' and 'any other reason that justifies relief.'").

29.     Courts in this circuit have held that modification of an order is appropriate under Rule 60(b)(1) where the terms of the entered order do not accurately reflect the parties' intentions

---

[3]     This is in contrast to motions for reconsideration under Rule 59(e), which question the "correctness of a judgment," seek to "re-litigate the original issue before the court" or "challenge the entire judgment including the merits." *See In re Grigg*, No. 11-71206-JAD, 2013 WL 5310207, at *1-2 (Bankr. W.D. Pa. Sept. 20, 2013) (citing *Rankin v. Heckler*, 761 F.2d 936, 942 (3d Cir. 1985); *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951F.2d 573 (3d Cir. 1991)).

due to a mistake or oversight. *See, e.g.*, *Travelers Indem. Co. v. Stedman*, 925 F. Supp. 345, 346-47 (E.D. Pa. 1996) (modifying previously entered order with respect to six checks that all parties agreed should not have been included in the order and finding this relief was appropriate pursuant to Rule 60(b)(1) "[g]iven that this [was] a clear example of a mistake by everyone involved, including th[e] Court"); *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 394-95 (Bankr. D. Del. 2011) (granting debtor's request to vacate order assuming a lease agreement pursuant to Rule 60(b)(1) on the grounds that the debtor mistakenly moved to assume lease agreement having not fully understood the terms of the agreement).

30.     In order to seek relief from a judgment, Federal Rule 60(b) states:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> **(1)** mistake, inadvertence, surprise, or excusable neglect;
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> **(4)** the judgment is void;
> **(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> **(6)** any other reason that justifies relief.

31.     "[A]lthough the policy of finality normally protects confirmed sales from orders to set aside, sales are properly set aside when compelling equities outweigh the interests in finality." *Matter of CADA Investments, Inc.*, 664 F.2d 1158, 1162 (9th Cir. 1981). "The policy of finality is not, however, absolute; in limited circumstances the courts have set aside confirmed sales. Courts have generally appeared willing to set aside confirmed sales that were 'tinged with fraud, error or similar defects which would in equity affect the validity of any private transaction.'" *Id.* at 1162 (citing *In re General Insecticide Co.*, 403 F.2d 629, 631 (2d Cir. 1968)); *In re Abbotts Dairies of*

8

*Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.") (citation omitted) (remanding for consideration of whether purchaser entered into completed sale transaction in good faith).

32. "It is well settled that a bankruptcy court can vacate a sale order as improvident upon appropriate facts and countervailing equities, even though there was no direct appeal from the sale order." *In re Silver Bros. Co., Inc.,* 179 B.R. 986, 1007 (Bankr. D.N.H. 1995). Even where no default has occurred by a successful bidder in a bankruptcy sale, the bankruptcy court, as a court of equity, nevertheless may vacate such sale orders when it appears that a particular order "was entered through mistake, inadvertence or improvidence." *Mason v. Ashback et al.,* 383 F.2d 779, 780 (10th Cir. 1967); *In re Time Sales Fin. Corp.*, 445 F.2d 385, 387 (3d Cir. 1971) (judicial sale should be confirmed unless "there was fraud, unfairness or mistake in the conduct of the sale"). The point is that judicial sales, unlike ordinary private commercial transactions, involve parties other than the particular parties to the sale transaction. *Matter of Berge*, 33 B.R. 642, 646 (Bankr. W.D. Wis. 1983) ("It brings into focus the claims of the debtor's other creditors that they have been deprived of recourse to an asset by an improvident sale.") (quoting *In re Madrid,* 21 B.R. 424, 428 (9th Cir. Bankr. App. 1982); *In re Silver Bros. Co., Inc.*, 179 B.R. at 1007-08.

33. MX contends that the Purchaser and DelBovo are not a good faith purchaser for value such that the sale to the Purchaser and DelBovo is protected by the finality of the sale.

34. Both the Trustee and the Court were misled by DelBovo by virtue of filing Schedules and SOFAS that did not disclose the existence of MX as a creditor or the existence of the Oregon Litigation within the proper Debtor entity. However, the Oregon Litigation is a

"Purchased Asset" under the APA. The Trustee and the Court were misled by DelBovo by failing to disclose that MX had previously offered to resolve the claims in the litigation prior to the Petition Date and was thus a prospective purchaser of the Assets. Indeed, while the Sale Motion represented that "no other prospective purchaser has come forward to express an interest in the Purchased Assets" (Sale Motion at ¶ 16), that assertion is misleading at best, as MX had already communicated an interest in resolving the claim that was the heart of the Purchased Assets at a substantial premium to the Purchaser's offer. All of this misleading information and conduct by DelBovo was while acting as a consultant for the Trustee to seek to maximize the value of the Debtors' assets-which certainly did not occur-in favor of a transaction solely benefiting DelBovo.

35. Further, the Court had no evidence in the form of attested or affirmed facts or oral evidence to support any finding in the Sale Order that (a) "actual written notice of the Sale [Motion], Hearing, and the deadline for objections to the [Sale] Motion have been afforded to all known interested persons and entities" (*see* Sale Order at ¶ F), that Purchaser and DelBovo are good faith purchasers for value, (c) that the "consideration to be provided by Purchaser pursuant to the APA: (i) is fair and reasonable; (ii) is the only, and therefore highest and best, offer for the Purchased Assets…" (*see* Sale Order at ¶ F), (d) that "[c]onsummation of the transactions contemplated in the APA will provide the highest and best value for the Purchased Assets…" (*see* Sale Order at ¶ J), (e) that "[p]urchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby, and otherwise has proceeded in good faith in all respects in connection with this proceeding…" (*see* Sale Order at ¶ L), (f) that the "Trustee and Purchaser have not engaged in any conduct that would permit the APA or any transaction contemplated thereunder to be avoided under section 363(n) of the Bankruptcy Code." (*see* Sale Order at ¶ M), or (g) any of the other findings in the Sale Order.

**B.  Reconsideration is Necessary to Avoid Manifest Injustice.**

36.     Additionally, MX requests the Court reconsider its Sale Order to avoid manifest injustice in these cases.

37.     A court may reconsider its order where necessary "to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *In re Energy Future Holdings Corp.*, 575 B.R. 616, 636 (Bankr. D. Del. 2017).  A prior decision should be reconsidered "where it appears [the Court] has overlooked or misapprehended some factual matter that might reasonably have altered the result reached by the Court."  *In re Energy*, 575 B.R. at 628 (internal citations omitted).  And while the exact meaning of "manifest injustice" and "clear error of law or fact" is unsettled, the error "'must be apparent to the point of being indisputable.'"  *Id.* (citation omitted).

38.     "[I]t is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court."  *In re Fort Wayne Telsat, Inc.*, 489 B.R. 773, 777 (Bankr. N.D. Ind. 2010), *subsequently aff'd*, 665 F.3d 816 (7th Cir. 2011).

39.     By far the most frequent mistake or infirmity held to warrant vacating a confirmed sale is defective notice to interested parties of the judicial sale.  *See, e.g., In re Time Sales,* 445 F.2d at 386-387; *Wolverton v. Shell Oil Co.*, 442 F.2d 666, 668, 670 (9th Cir. 1971); *Mason,* 383 F.2d at 780; *In re Insulation & Acoustical Specialities, Inc.,* 311 F.Supp. 1209, 1215-1216 (W.D.Mo.1969), *affirmed*, 426 F.2d 1189 (8th Cir.1970); *In re Winstead,* 33 B.R. 408, 410-411 (M.D.N.C. 1983).  ***Other objections deemed sufficient to defeat confirmation, though more isolated in frequency, involve further irregularities in the judicial sale proceedings themselves such as "unfairness toward bidders, stifling of competition, inaccurate or otherwise insufficient advertisement, sham bidding or 'puffing,' …. and interference with the orderly conduct of the***

11

*sale*." *Matter of Chun King, Inc.*, 753 F.2d 547, 551 (7th Cir. 1985) (quoting 4B Collier on Bankruptcy, ¶ 70.98[17], pp. 1189-1190) (emphasis added).

40.     In limited circumstances, confirmed sales (or orders involving other vested rights) have been properly set aside by the confirming court in the absence of the type of fraud or error referred to in *General Insecticide*.    In *In re Time Sales Finance Corp.*, 445 F.2d 385 (3d Cir. 1971), the Third Circuit upheld an order setting aside a sale because, through an "innocent mistake," the trustee's attorney failed to notify a bidder of the confirmation hearing.  The court suggested that the "major question" in examining the propriety of orders to set aside is "one of common decency," and concluded that the referee acted "completely within his sound discretion" in "immediately ... call(ing) for a new hearing which gave everybody concerned equal opportunity to buy the particular property."  445 F.2d at 387.  *See also In re Lamont*, 453 F.Supp. 608 (N.D.N.Y.1978), *aff'd.*, 603 F.2d 213 (2d Cir. 1979); *In re Lintz West Side Lumber, Inc.*, 655 F.2d 786 (7th Cir. 1981) (affirming order to set aside abandonment of estate property to secured creditors on basis of evidence, discovered after abandonment, that secured interests were improperly perfected).

41.     The Trustee did not inform the Court of the defective notice to MX (or perhaps was not aware in reliance on an insider purchaser who presumably had his own subjective motivations). Perhaps even worse, the Debtors and DelBovo were aware that MX would be an interested purchaser who had previously offered substantially more to resolve the claims than was approved in the Sale Order.  In doing so, MX was treated unfairly, competitive bidding was stifled, and a transparent sale process on notice to all parties-in-interest did not take place.  If the Court had been aware of the existence of MX and its prior (and still existing) interest in acquiring the Assets, the

12

Court would have been able to exercise independent judgment as to the proper sale process and require a competitive auction process and not permit a private sale to an insider purchaser.

42. For all of the reasons stated above, and to avoid manifest injustice in these cases, MX requests that the Court reconsider and set aside the Sale Order, and direct the Trustee to re-file the Sale Motion to permit competitive bidding and to afford proper notice to all parties-in-interest and affected parties.

## **Notice**

43. MX will provide notice of this motion to: (a) the United States Trustee for the District of Delaware; (b) counsel for the Trustee; (c) counsel for the Debtors; (d) counsel for the Purchaser; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). MX submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

44. No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank.]*

11216855.v9

WHEREFORE, MX respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) setting aside the Sale Order, (b) directing the Trustee to refile the Sale Motion to permit competitive bidding, (c) directing that all parties-in-interest and affected parties be provided notice of the Sale Motion, and (d) granting such other relief as the Court deems appropriate under the circumstances.

Dated: November 18, 2024
Wilmington, Delaware

KLEHR HARRISON HARVEY
BRANZBURG LLP

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
919 Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 426-1189
Email: dpacitti@klehr.com

*Co-Counsel for MX Solutions LLC*

TONKON TORP LLP
Steven Wilker (*pro hac vice* admission forthcoming)
Timothy Conway (*pro hac vice* admission forthcoming)
888 SW Fifth Ave., Suite 1600
Portland, Oregon 97204
Telephone: (503) 221-1440
E-mail: steven.wilker@tonkon.com
            tim.conway@tonkon.com

*Co-Counsel for MX Solutions LLC*

11216855.v9